EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| 800 Ponce de León Corp.<br><br>Peticionaria<br><br>v.<br><br>American International Insurance Company of Puerto Rico<br><br>Recurrida | Certiorari<br><br>2020 TSPR 104<br><br>205 DPR _____ |

Número del Caso: CC-2018-498


Fecha: 15 de septiembre de 2020


Tribunal de Apelaciones:

    Circuito Regional de San Juan y Caguas, Panel II


Abogados de la parte peticionaria:

    Lcdo. Carlos R. Ríos Gautier
    Lcda. Gladys M. Míguez Corujo
    Lcda. Paola J. Figueroa Alemañy


Abogados de la parte recurrida:

    Lcdo. Francisco A. Rosa Silva
    Lcdo. Luis N. Saldaña Román
    Lcda. Elizabeth Aquino Pérez
    Lcdo. Bayoán Muñiz Calderón




Materia: Derecho Procesal Civil - Facultad del Tribunal de Apelaciones para revisar resoluciones u órdenes interlocutorias que pueden afectar sustancialmente el resultado de un pleito o limitar la reclamación de una parte.




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

800 Ponce de León Corp.

    Peticionaria

        v.

American International
Insurance Company of
Puerto Rico

    Recurrida

CC-2018-0498   *Certiorari*

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 15 de septiembre de 2020.

Nos corresponde resolver si el Tribunal de Apelaciones erró al denegar la *Petición de Certiorari* que presentó 800 Ponce de León Corp. (PDL) tras concluir que se recurría de una resolución interlocutoria en un supuesto que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, no contempla. En su recurso de *certiorari* ante el foro apelativo intermedio, PDL solicitó que se revocara una Orden del Tribunal de Primera Instancia, mediante la cual el foro primario impidió que PDL presentara evidencia sobre la alegada conducta dolosa de AIG Insurance Company of Puerto Rico (AIG) en la tramitación de una reclamación al amparo de un contrato de fianza.[1]

---

[1] Cabe mencionar que el aquí demandado –AIG Insurance Company of Puerto Rico– se conocía originalmente como la American International Insurance Company of Puerto Rico. No obstante, y para evitar confusión, en lo sucesivo se refiere a la entidad por su nombre actual: AIG.

Por los fundamentos que se exponen a continuación, resolvemos que el Tribunal de Apelaciones erró al denegar expedir el *certiorari*, puesto que: (1) esta es la etapa idónea del caso para atender el señalamiento de error que adujo PDL y (2) negarse a expedir constituiría un fracaso a la justicia. Lo anterior, debido a que, conforme los artículos 1054 y 1060 del Código Civil, infra, PDL tiene derecho a presentar evidencia para sustentar sus alegaciones sobre dolo contractual contra AIG. Veamos.

I

El 12 de abril de 1999 PDL y Miramar Construction Co., Inc. (MCC) otorgaron un contrato de construcción por la suma de $13,282,000.00 para el proyecto de un edificio de oficinas y estacionamiento llamado Capitol Office Building. En virtud del contrato, la contratista MCC se comprometió a completar sustancialmente la obra para el 11 de septiembre de 2000 y PDL se obligó a hacer pagos sucesivos de acuerdo con el cumplimiento de MCC hasta una total de $13,282,000.00.

Con el propósito de garantizar la obligación, AIG emitió una fianza de ejecución y pago ("Performance and Payment Bond") por la cantidad de $13,282,000.00 a favor de PDL. Mediante el contrato de fianza, AIG se obligó solidaria y mancomunadamente a cumplir con las obligaciones de MCC en caso de que este incumpliera con el contrato de construcción. En efecto, el contrato de

construcción se incorporó por referencia al contrato de fianza.

Ante el incumplimiento de MCC con el contrato de construcción y la negativa de AIG de resolver las reclamaciones de PDL sobre el desembolso de la fianza, PDL presentó una demanda sobre incumplimiento de contrato y daños y perjuicios contra AIG. Alegó que AIG rehusó honrar la fianza de ejecución y pago relacionada con el contrato de construcción por lo que se vio obligada a buscar financiamiento externo para sufragar los costos de construcción. En consecuencia, reclamó daños ascendentes a $18,862,402.00 más $500,000.00 por concepto de costas, gastos, intereses y honorarios de abogado. Incluyó entre sus alegaciones que AIG actuó de mala fe durante todo el proceso de reclamación y que procedía imponer responsabilidad por el monto total de los daños que sufrió.

Luego de algunos trámites procesales, AIG solicitó la desestimación de la causa de acción sobre daños y perjuicios. Entre otras cosas, alegó que un reclamo bajo una fianza no podía dar lugar a una acción en daños ni a la concesión de remedios que excedieran el límite monetario de la responsabilidad de la fiadora según se estableció en el contrato de fianza. Por su parte, PDL arguyó que en nuestro derecho civil existen remedios contra quienes obran de mala fe o negligentemente en el cumplimiento de sus obligaciones y que, como la fianza se

constituyó mediante un contrato, sus derechos y obligaciones se regían por el Código Civil en todo lo que el Código de Seguros no regulara expresamente. Argumentó que AIG se obligó solidariamente a ejecutar la obra si MCC incumplía, por lo que AIG era responsable tanto por el monto total afianzado como también por los gastos en exceso que PDL tuvo que incurrir para completar la obra como consecuencia de la mala fe de la fiadora en el proceso de la reclamación.

El 16 de enero de 2007 el Tribunal de Primera Instancia emitió una Resolución en la cual denegó la solicitud de desestimación. Concluyó que la causa de acción de daños y perjuicios por el alegado proceder de mala fe de AIG estaba apoyada en los Arts. 1054 y 1210 del Código Civil de Puerto Rico, los cuales aplican a los contratos de fianza. Resolvió, pues, que "[c]iertamente, la prueba que en su día se presente sobre la ausencia de buena fe en el cumplimiento de las obligaciones por parte de la demandada, tal como alega la demandante, y los daños que se prueben que son dimanantes de tal actuación, serán determinantes para el Tribunal imponer mayor responsabilidad, si alguna, a la cantidad principal que se fijó en el cuerpo de la fianza".[2]

Inconforme, AIG presentó un recurso de *certiorari* ante el Tribunal de Apelaciones, pero el foro intermedio denegó expedir el recurso en ese momento. Fundamentó su

---

[2] *Resolución,* Apéndice, pág. 910.

determinación en que las alegaciones de PDL en torno a la mala fe y falta de diligencia de AIG –a base de las cuales reclamaba indemnización en exceso del límite de la fianza- debían dilucidarse en un juicio plenario. Explicó que los daños que reclamó PDL, de ser probados, son daños que emanan de una relación contractual –el contrato de fianza- por lo cual esa controversia se debe regir por los artículos del Código Civil sobre contratos y las consecuencias de su incumplimiento. No obstante, aclaró que lo anterior dependería de que PDL en su día lograse probar que AIG incurrió en mala fe, negligencia, dolo, culpa o morosidad.

Devuelto el caso al foro primario, y en consideración a los aspectos técnicos y especializados del caso, el tribunal nombró al Lcdo. Carlos S. Dávila como Comisionado Especial (Comisionado) al amparo de la Regla 41 de Procedimiento Civil, 32 LPRA Ap. V, R. 41. Su encomienda principal fue rendir un informe al Tribunal con determinaciones de hechos, conclusiones de derecho y recomendaciones una vez el caso quedara sometido para adjudicación en sus diferentes etapas.

A tono con su encomienda, el Comisionado emitió una Orden en la que aclaró que el caso se bifurcaría en dos etapas. En la primera etapa se atendería la controversia sobre la declaración de *default*; o sea, el incumplimiento con el contrato de construcción y si se activó la responsabilidad de la fiadora. En la segunda etapa, se

desfilaría evidencia sobre el monto de los daños, si alguno. Una vez se celebraron los procedimientos de la primera etapa, el Comisionado sometió al Tribunal un Informe Final en el cual concluyó que MCC no incumplió con el contrato de construcción.[3] Así, no llevó a cabo la segunda etapa pues recomendó que el tribunal declarara sin lugar la demanda.

Luego de varios trámites procesales, el tribunal acogió el Informe Final del Comisionado y desestimó la demanda. Concluyó que MCC no abandonó el proyecto y que la paralización de la construcción estuvo justificada. En desacuerdo, PDL presentó un recurso de apelación. Mediante Sentencia dictada el 29 de mayo de 2015 (Sentencia de 2015) el Tribunal de Apelaciones revocó el dictamen recurrido. Concluyó que MCC abandonó el proyecto sin intención de regresar y que, por lo tanto, AIG, como fiadora, era responsable frente a PDL. El foro intermedio determinó que "de acuerdo con las obligaciones contraídas solidaria y mancomunadamente, [AIG] deberá responder por los daños y perjuicios causados por el incumplimiento de la fianza; a saber: el costo al tiempo de la construcción para terminar el [proyecto de construcción], hasta un total ascendente a $13,282,000.00".[4]

---

[3] En particular, en la primera etapa del juicio se atendieron las siguientes controversias: (1) si MCC tuvo una justificación para paralizar la construcción; (2) si PDL tenía fundamentos para declarar a MCC en incumplimiento contractual craso y (3) si PDL podía dar por terminado el contrato de construcción con MCC. *Informe Final* del Comisionado, Apéndice, pág. 438.

[4] *Sentencia de 2015*, Apéndice, pág. 907.

Devuelto el caso al foro primario, este lo refirió al Comisionado para la continuación de los procedimientos. Luego de varios trámites procesales y mientras el caso estaba ante la atención del Comisionado, AIG planteó mediante moción que PDL pretendía presentar prueba sobre controversias ajenas a los asuntos encomendados y a lo que el Tribunal de Apelaciones dispuso en la Sentencia de 2015. Específicamente, arguyó que PDL quería someter prueba sobre: (1) la falta de ajuste por parte de AIG, (2) la mala fe de AIG y (3) la posibilidad de ser compensada en exceso del límite que estableció el Tribunal de Apelaciones en su Sentencia de 2015. En síntesis, alegó que ello no procedía debido a que el Tribunal de Primera Instancia encomendó al Comisionado únicamente que continuara los procedimientos conforme a lo dispuesto en la Sentencia de 2015.[5] Así, arguyó que el referido al Comisionado fue a los fines de celebrar una vista de daños hasta un total ascendente a $13,282,000.00, por lo que cualquier pretensión de ampliar el ámbito establecido por el Tribunal de Apelaciones y el Tribunal de Primera Instancia para esa etapa de los procedimientos sería una actuación *ultra vires*.[6]

Por su parte, PDL replicó que, debido a que el caso se encontraba en su etapa final, procedía que se le

---

[5] Véase *Resolución y orden enmendada nunc pro tunc*, Apéndice, pág. 946.
[6] *Moción urgente para solicitar vista argumentativa sobre el alcance del referido del Tribunal Superior al Comisionado Especial*, Apéndice, pág. 842.

permitiera presentar evidencia no solo de la cuantía por la que respondía la fianza, sino también de los daños adicionales que AIG le ocasionó al actuar dolosamente durante el trámite de su reclamación. Lo anterior, pues según la ley del caso nunca se desestimó su causa de acción de daños por mala fe. Añadió que en la Sentencia de 2015 el foro apelativo intermedio se limitó a atender controversias sobre el incumplimiento con el contrato de construcción por ser ese asunto el que se llevó ante su atención. Así, arguyó que el referido tribunal no pasó juicio sobre su causa de acción por mala fe, dolo o negligencia.

Tras considerar los planteamientos de las partes, el Comisionado determinó que su encomienda era continuar los procedimientos de conformidad con lo que el Tribunal de Apelaciones resolvió en la Sentencia de 2015, la cual específicamente limitó la responsabilidad de AIG al monto de $13,282,000.00.[7]

Así las cosas, el 5 de febrero de 2018 PDL solicitó al foro primario que interviniera y aclarara la encomienda que delegó al Comisionado. En particular, solicitó que le permitiera al Comisionado resolver todos los asuntos pendientes relacionados con los daños sin la limitación al monto de los daños que AIG pretendía imponer. Por su parte, AIG se opuso. Tras evaluar las mociones que las partes presentaron, el foro primario emitió la Orden

---

[7] Véase *Resolución* del Comisionado, Apéndice, pág. 953.

recurrida, en la cual indicó que la encomienda al Comisionado era para continuar con los procesos conforme lo dispuso el Tribunal de Apelaciones en la Sentencia de 2015. De conformidad, indicó que no procedía la intervención que PDL solicitó y ordenó la continuación de los procedimientos ante el Comisionado.[8]

Inconforme, PDL presentó un recurso de *certiorari* ante el Tribunal de Apelaciones en donde señaló que el Tribunal de Primera Instancia cometió los errores siguientes:

> Erró al limitar las controversias pendientes de resolverse únicamente a la determinación de daños a los que se refiere la Sentencia del 2015 dejando afuera los demás daños reclamados por 800 [PDL], los cuales no fueron objeto de adjudicación en la Sentencia del 2015.

> Erró al determinar equívocamente que el límite que menciona la Sentencia del 2015 tuvo el efecto de exonerar a AIG de responder por daños por su conducta morosa, dolosa y de mala fe, pasada, presente y futura en el cumplimiento de sus obligaciones.

Tras evaluar estos planteamientos, el foro apelativo intermedio concluyó que lo que resolvió el foro primario era un asunto relacionado con el trámite del caso y constituyó un ejercicio válido de su discreción. Asimismo, indicó que ese tipo de dictamen no es revisable según la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. En consecuencia, resolvió que carecía de jurisdicción para atender el asunto, por lo que se negó a expedir el recurso de *certiorari*.

---

[8] Véase *Orden* del TPI, Apéndice, pág. 1038.

En desacuerdo, PDL acude ante nos y señala el error siguiente:

> Erró el TA al declararse sin jurisdicción y rehusar expedir el auto e impedir que en la segunda y última etapa del litigio se dilucide, además de los daños cubiertos bajo la fianza emitida, la causa de acción que se origina en la alegada mala fe de AIG en el ajuste de la reclamación.

El 25 de enero de 2019 expedimos el recurso. Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A. Recurso de *certiorari*

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). La determinación de expedir o denegar un recurso de *certiorari* está enmarcada dentro de la discreción judicial. Íd. Dicha discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Bco. Popular de PR v. Mun. de Aguadilla, 144 DPR 651, 657-658 (1977).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios

provisionales de la Regla 56, *injunctions* de la Regla 57 o de la **denegatoria de una moción de carácter dispositivo**. No obstante, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.

Cabe resaltar que, con la aprobación de la Regla 52.1, supra en el 2009, la Asamblea Legislativa limitó los asuntos interlocutorios que el Tribunal de Apelaciones podía revisar bajo el entendimiento de que estos podían esperar hasta la conclusión del caso para ser revisados en apelación. IG Builders et al. v. BBVAPR, supra. Así, se fijó taxativamente cuáles asuntos interlocutorios eran aptos para revisión mediante *certiorari*. Íd., págs. 336-337. En aquel momento, la revisión se limitó a instancias en las cuales se recurriera de una resolución u orden bajo la Regla 56 (remedios provisionales) y la Regla 57 (*injunctions*). Municipio Autónomo de Caguas v. JRO Construction, Inc., et al., 201 DPR 703, 710 (2019).

Posteriormente, las leyes Núm. 220-2009 y Núm. 177-2010 enmendaron la Regla 52.1, supra, e incorporaron otros

escenarios que permiten la intervención interlocurtoria del foro revisor, ya sea por su naturaleza **o por el efecto que produciría a las partes**. Municipio Autónomo de Caguas v. JRO Construction, Inc., et al., supra; IG Builders et al. v. BBVAPR, supra.

Específicamente la Ley Núm. 177-2010 extendió la facultad revisora del Tribunal de Apelaciones a resoluciones u órdenes interlocutorias que traten asuntos de interés público o situaciones que requieran la atención inmediata del foro revisor, **pues aguardar hasta la conclusión del caso conllevaría un fracaso irremediable de la justicia**. Íd. La exposición de motivos de dicha ley explica que, el texto original de la Regla 52.1 establecía un listado taxativo que no consideraba situaciones excepcionales que requieren la intervención oportuna del foro apelativo intermedio para corregir errores del tribunal de instancia. Exposición de Motivos de la Ley Núm. 177-2010; véase Municipio Autónomo de Caguas v. JRO Construction, Inc., et al., supra.

A base de lo anterior expusimos que la inclusión de las enmiendas implicó el reconocimiento de la Asamblea Legislativa de que **"ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión inmediata"**. Municipio Autónomo de Caguas v. JRO

Construction, Inc., et al., supra (citando a R. Hernández

Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal*

*Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 533)

(Énfasis suplido).

Por otro lado, el examen que hace el tribunal

apelativo previo a expedir un certiorari no se da en el

vacío ni en ausencia de otros parámetros. IG Builders et

al. v. BBVAPR, supra. La Regla 40 del Reglamento del

Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala

los criterios que debe tomar en consideración ese foro al

evaluar si debe expedir un auto de *certiorari*. En

particular, esta Regla dispone:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la **etapa del procedimiento** en que se presenta el caso es la más propicia para su consideración.

(F)     Si la expedición del auto o de la orden de mostrar causa no causan un **fraccionamiento indebido** del pleito y una **dilación indeseable** en la solución final del litigio.

(G)     Si la expedición del auto o de la orden de mostrar causa evita un **fracaso de la justicia**.[9]

**B. La obligación que surge del contrato de fianza**

La controversia de este caso versa sobre una fianza de ejecución y pago en el contexto de un contrato de construcción. Este tipo de fianza se utiliza con frecuencia para garantizar las obligaciones de los contratistas en proyectos de construcción. En Andamios de P.R. v. JPH Contractors, Corp., 179 DPR 503 (2010), este Tribunal explicó en qué consisten las fianzas de ejecución y pago. En lo pertinente, señaló que:

> [C]uando se realiza un proyecto de construcción, el contratista general de la obra usualmente garantiza el cumplimiento de sus obligaciones con dos contratos de fianza de construcción, los cuales se denominan de cumplimiento (*performance bond*) y de pago (*labor and material payment bond*). Mediante la *fianza de cumplimiento*, la fiadora garantiza al dueño de la obra que el proyecto que el contratista va a ejecutar, conforme a su obligación, según pactada en el contrato de construcción, se realizará según este contrato o pagará los daños en los que haya incurrido hasta el límite de dinero establecido en la fianza.
>
> Por otra parte, en la *fianza de pago*, la fiadora le garantiza al dueño de la obra que toda la labor y los materiales utilizados en el proyecto serán pagados por la fiadora si el contratista general incumple. Un fiador

---

[9] 4 LPRA Ap. XXII-B.3 (Énfasis suplido).

solidario responde igual que su fiado. En otras palabras, éste está obligado a cumplir el contrato íntegra y totalmente, desde el momento cuando el fiado deja de cumplir lo convenido.[10]

Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor con los mismos. Art. 1044 del Código Civil, 31 LPRA sec. 2994. Así ocurre con los contratos de fianza. Mediante el contrato de fianza una parte se obliga a pagar o cumplir por un tercero, en caso de este no hacerlo. Art. 1721 del Código Civil, 31 LPRA sec. 4871. En otras palabras, el fiador se obliga a pagar al acreedor en caso de que el deudor incumpla con el contrato subyacente. Por lo tanto, se trata de una obligación accesoria que no existe sin la obligación principal. Art. 1723 del Código Civil, 31 LPRA sec. 4873. De modo que con la fianza "se proporciona al acreedor mayor probabilidad de ver satisfecho su interés, ya que se amplía su poder de agresión a un patrimonio distinto del originalmente responsable".[11]

A tono con lo anterior, el interés primordial y el derecho que tiene el acreedor de una fianza de ejecución y pago es la garantía de no tener que pagar con sus propios fondos un proyecto si el contratista incumple con el contrato de construcción. Así, la obligación solidaria y mancomunada que contrae una fiadora le exige interponer los

---

[10] Andamios de P.R. v. JPH Contractors, Corp., 179 DPR 503, 514 (2010) (citando a San José Realty, S.E. v. El Fénix de P.R., 157 DPR 427, 451 (2002)).
[11] La Cruz, *Elementos del Derecho Civil II Derecho de Obligaciones*, Vol. II, 5ta edición, Madrid, 2013, pág. 317.

intereses del acreedor por encima de los suyos al momento de atender una reclamación sobre la fianza.

La extensión de obligación del fiador queda enmarcada en los Arts. 1725 y 1726 del Código Civil, 31 LPRA secs. 4875-6. El primero establece que el fiador no puede obligarse a más que el deudor principal; el segundo que la fianza debe ser expresa y no puede extenderse a más de lo contenido en ella. Así, nos explica el tratadista Díez-Picazo que la obligación del fiador encuentra su fundamento en la función de garantía que conlleva, lo que no existiría si el fiador adquiriera una obligación de mayor entidad que la obligación garantizada.[12] Por lo tanto, si una fiadora se hubiese obligado a más que el deudor principal, se reducirá su obligación a los límites de la deuda garantizada. No obstante, el mismo tratadista nos resalta que "[u]na extensión de la obligación del fiador, superior a la extensión de la del deudor principal, carecería de causa y, **si tuviera alguna, tendría que necesariamente ser distinta de la función de garantía**".[13] Por lo tanto, un deudor fiador es responsable por su obligación de **garantía** hasta el límite de la deuda garantizada, lo que no excluye que por una fuente jurídica independiente sea responsable por un monto mayor como consecuencia de su incumplimiento con esa obligación.

---

[12] Díez- Picazo, *Fundamentos del Derecho Civil Patrimonial II*, 6ta edición, España, 2008, pág. 498.
[13] Íd., pág. 499 (Énfasis suplido).

Las fiadoras, al igual que las aseguradoras, se rigen en primera instancia por el Código de Seguros de Puerto Rico. Este señala que, por definición, *seguro de garantía* incluye "garantizar el cumplimento de contratos y garantizar y otorgar fianzas, obligaciones y contratos de fianza". Art. 4.090 del Código de Seguros, 26 LPRA sec. 409. En otras palabras, los contratos de fianza son un seguro de garantía según lo contempla la ley que aplica a las aseguradoras.

En lo que atañe a las obligaciones y los contratos de fianza, el Artículo 22.040 del Código de Seguros, 26 LPRA sec. 2204, establece que "todo seguro de garantía que garantice el cumplimiento de contratos, sea una fianza civil o criminal o garantice cualquier tipo de obligación [,] obligará solidariamente al asegurador y su principal, pero sujeto a los términos de prescripción y caducidad". Asimismo, en torno al pago de las reclamaciones, el Código de Seguros detalla que el asegurador de la garantía vendrá obligado a satisfacer la deuda de su principal <u>a requerimientos del acreedor</u>, luego de verificar la existencia, liquidez y exigibilidad de la reclamación en un término de noventa (90) días. 26 LPRA sec. 2205. De no hacerlo, el asegurador incurrirá en violación al Artículo 27.161 del mismo Código, el cual detalla las prácticas desleales en el ajuste de las reclamaciones. <u>Íd</u>.

Cabe mencionar que una de las controversias que atendió el Tribunal Supremo en el caso <u>Morales v. Automatic</u>

Vending Service, Inc., 103 DPR 281 (1975), fue si una aseguradora era responsable por la totalidad de una sentencia cuando -de mala fe e irrazonablemente- rechazó una oferta de transacción. Resolvimos que era razonable imponer a la aseguradora la responsabilidad de pagar cualquier suma en exceso del límite establecido en la póliza pues esta actuó de mala fe y negligentemente al no transigir la reclamación dentro de los límites de la póliza. Íd., pág. 290. Allí, sostuvimos que la responsabilidad emanaba del pacto implícito que nace de un contrato de seguro que le impone al asegurador la obligación de actuar con especial consideración a los intereses del asegurado. Íd., pág. 288. Por lo tanto, una aseguradora que interpuso sus propios intereses a los del asegurado -quien obtuvo una póliza precisamente para no tener que pagar con su dinero los daños ocasionados por el vehículo asegurado- era responsable de pagar aún por encima del límite de la póliza. Íd., pág. 290. Similarmente, uno de los intereses primordiales y derechos que tiene el acreedor de una fianza de ejecución y pago es la garantía de no tener que pagar con sus propios fondos el proyecto si el contratista incumple con el contrato de construcción.

**C. Las consecuencias del incumplimiento contractual**

El hecho de que una compañía aseguradora haya sido el ente que expidió la fianza no excluye la aplicación de las disposiciones del Código Civil sobre las consecuencias del incumplimiento de un contrato. El Art. 1054 del Código

Civil dispone que "quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravienen al tenor de aquellas". 31 LPRA sec. 3018. Así, la causa del incumplimiento determinará la extensión de la indemnización.[14]

Nos señala Puig Brutau que:

[E]n virtud del incumplimiento imputable al deudor, el acreedor puede pedir la realización coactiva de la prestación debida o la entrega del equivalente económico de la misma. Pero, además, puede demostrar que el incumplimiento y el hecho de no disponer oportunamente de lo que debía entregar o realizar el deudor, ha repercutido en su patrimonio de una manera desfavorable, produciendo daños de la misma manera que los produce un acto ilícito.[15]

La culpa o la negligencia del deudor consiste en la omisión de la diligencia que exige la naturaleza de la obligación. Art. 1057 del Código Civil, 31 LPRA sec. 3021. Es decir, es la falta de diligencia del deudor en procurar el cumplimiento de la obligación.[16] Surge de esta definición que el incumplimiento de la obligación por culpa o negligencia no acarrea un elemento de intención. El deudor incumple, no por mala fe, sino falta de diligencia. De manera que para efectos de los daños que se podrán indemnizar a causa del incumplimiento aplicarán aquellos por los que responde un deudor de buena fe. Según el primer

---

[14] J. Vélez Torres, *Derecho de Obligaciones*, 2da ed. San Juan, PR, 1997, pág. 278 (revisado por Migdalia Fraticelli Torres).

[15] J. Puig Brutau, *Fundamentos del Derecho Civil*, 3era ed. Barcelona, España, 1985, pág. 443.

[16] J. Vélez Torres, *Derecho de Obligaciones*, 2da ed. San Juan, PR, 1997, pág. 275.

párrafo del artículo 1060 del Código Civil, 31 LPRA sec. 3024, estos "son los previstos o los que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de la falta de cumplimiento de la obligación".

Por su parte, el dolo consiste en la omisión consciente, intencionada y voluntaria de eludir el cumplimiento de la obligación con conocimiento de que se realiza un acto injusto. Colón v. Promo Motor Imports, Inc., 144 DPR 659, 668 (1997). Véase Canales v. Pan American, 112 DPR 329, 340 (1982); Márquez v. Torres Campos, 111 DPR 854, 864 (1982). Según el tratadista José Ramón Vélez Torres, "[e]s el actuar de mala fe, aunque en ello no haya intención premeditada de causar daño al acreedor. No es preciso […] el ánimo de dañar, sino la voluntad de incumplir".[17] Así, a diferencia del dolo en el consentimiento al momento de otorgar el contrato -que pudiera producir la nulidad del contrato- **el dolo en el cumplimiento de la obligación da lugar a una reclamación en daños.**[18]

El Código Civil dispone que **la responsabilidad procedente del dolo es exigible en todas las obligaciones.** Art. 1055 del Código Civil, 33 LPRA sec. 3019. Sobre los daños y perjuicios en caso de dolo, el deudor responderá de **todos** los que conocidamente se deriven de la falta de

---

[17] Íd., pág. 274.
[18] Íd.

cumplimiento de la obligación. Art. 1060 del Código Civil, 33 LPRA sec. 3024. Por lo tanto, el deudor que incurre en dolo en el cumplimiento de su obligación está sujeto a indemnizar al acreedor por todos los daños que surjan de ese incumplimiento.

Cabe señalar que, en nuestro ordenamiento jurídico, hay un deber de actuar de buena fe en las relaciones contractuales. Este principio obliga a los contratantes "no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 33 LPRA sec. 3375. Basándose en esta disposición, nuestra jurisprudencia ha reconocido que, de acuerdo con la naturaleza de la relación jurídica entre las partes, la buena fe crea deberes especiales de conducta exigibles en cada contrato. Arthur Young & Co. v. Virgilio Vega III, 136 DPR 157, 170 (1994). De manera que "todo contrato debe tener como pilar principal el principio de la buena fe". Íd.

### III

PDL alega que el Tribunal de Apelaciones erró al denegar su recurso de certiorari pues sostiene que la Orden del Tribunal de Primera Instancia de la que se recurre no es de carácter procesal, sino de carácter dispositivo. Arguye que dicha orden le impide presentar prueba sobre la causa de acción de daños y perjuicios por mala fe, dolo, negligencia o mora, lo que tiene el efecto práctico de

desestimar varias de sus alegaciones. Además, sostiene que presentó la reclamación en un momento idóneo pues esperar a la apelación de la sentencia final sería un fracaso de la justicia si se toma en consideración que el Tribunal de Primera Instancia dispondría del caso sin evaluar prueba alguna sobre todas las alegaciones. En todo caso, sostiene que la determinación del foro apelativo intermedio fracciona indebidamente el caso y causa una dilación indeseable a la solución de un pleito que comenzó hace casi quince (15) años. Esto, pues el foro primario tendría que atender la reclamación por mala fe, dolo o mora en una **tercera** etapa que no existe.

Por su parte, AIG alegó que la intención de PDL con este recurso es que revisemos la Sentencia de 2015 la cual advino final y firme. Así, sostuvo que esa determinación del foro apelativo intermedio no es revisable. También resaltó que las alegaciones de mala fe que aduce PDL son planteamientos prematuros sobre temeridad en el trámite del caso los cuales deben determinarse cuando se dicte la sentencia final.[19]

La encomienda inicial que el Tribunal de Primera Instancia delegó al Comisionado se limitó a atender si se

---

[19] No obstante, adelantamos que la conducta de mala fe y dolo que PDL le imputa a AIG se refiere a su conducta durante el proceso de reclamación de la fianza previo al reclamo judicial. Por lo tanto, no le asiste la razón a AIG en cuanto a ese extremo. Cabe señalar que, si bien AIG en su alegato presentó varios argumentos tendentes a demostrar que no incurrió en dolo en la tramitación de reclamación de PDL, no entramos a discutirlos debido a que estos no son pertinentes a la controversia ante nuestra consideración, a saber: si PDL tenía derecho a presentar evidencia sobre la conducta negligente o dolosa en la que presuntamente incurrió AIG durante la tramitación de la reclamación de fianza.

incumplió con el contrato de construcción y, de ser ese el caso, determinar la responsabilidad de la fiadora como consecuencia. Así, en la Sentencia de 2015, el Tribunal de Apelaciones se limitó a resolver que: (1) MCC incumplió con el contrato de construcción, por lo cual (2) se activó la responsabilidad de AIG al amparo del contrato de fianza. Sin embargo, el foro apelativo no adjudicó o atendió la responsabilidad de AIG por razón de su alegada conducta de mala fe o dolo durante la tramitación de la reclamación de la fianza. Simple y llanamente, ese asunto no estuvo ante su consideración en aquel momento. Por lo tanto, no podemos concluir que la Sentencia de 2015 exoneró a AIG de su responsabilidad por los daños que PDL alegó fueron producto de mala fe, dolo o mora.

Así, la expresión del foro apelativo intermedio en la Sentencia de 2015 a los efectos de que AIG deberá responder por los daños y perjuicios "hasta un total ascendente a $13,282,000.00" se refiere únicamente a los daños por los que responde la fianza tras el incumplimiento de MCC con el contrato de construcción. Ese total concierne solamente a la responsabilidad de AIG por su obligación, como fiadora de MCC, de cumplir con el contrato de construcción. Ese monto no implica la totalidad de los daños que pudo haber causado AIG **por su propia conducta** de mala fe o dolo en el cumplimiento de su obligación de desembolsar la fianza, a tenor con el Art. 1060 del Código Civil, <u>supra</u>. Lo anterior, pues esa reclamación no emana del incumplimiento

de MCC, lo cual a su vez activó la responsabilidad de AIG bajo el contrato de fianza, sino de la conducta presuntamente dolosa o de mala fe de la fiadora en el cumplimiento de su obligación de desembolsar la fianza.

Ciertamente, el Art. 1726 del Código Civil, 31 LPRA sec. 4876, establece que la fianza no puede extenderse a más de lo contenido en ella. No obstante, lo anterior no es incompatible con la reclamación de PDL, pues el límite que establece la disposición se refiere a los daños por los que responde la fianza, los cuales no incluyen los daños independientes por los que respondería la fiadora si incumple dolosamente con la obligación que contrajo libremente bajo el contrato de fianza. Es decir, se trata de señalamientos sobre fuentes de derecho independientes. La causa por la que se activa el desembolso de la fianza es la obligación de garantía que contrajo la fiadora a base del contrato de construcción hasta el tope de $13,282,000.00. Sin embargo, la causa para el reclamo por los daños totales surge de la obligación de la fiadora de cumplir con su obligación conforme al principio de buena fe. Precisamente lo que el acreedor de una fianza espera que haga una fiadora es cumplir con lo que se expresó en el contrato y actuar de manera razonable en respuesta a una reclamación. Por lo tanto, de acuerdo con los Arts. 1054 y 1060 del Código Civil, supra, si un acreedor prueba que la fiadora incurrió en dolo o mala fe en el cumplimiento de su obligación, tiene derecho a reclamar una indemnización por

la **totalidad de los daños** que sufrió a causa de su incumplimiento.

Por otra parte, la Regla 52.1, supra faculta al Tribunal de Apelaciones a revisar determinaciones interlocutorias en las cuales esperar el final del caso constituiría un fracaso irremediable de la justicia. La enmienda que introdujo la Ley Núm. 177-2010 reconoció que ciertas decisiones interlocutorias del Tribunal de Primera Instancia pueden afectar sustancialmente el resultado de un pleito o tener efectos limitativos para la reclamación de una parte. Municipio Autónomo de Caguas v. JRO Construction, Inc., et al., supra. Tales determinaciones se pueden revisar excepcionalmente bajo la Regla 52.1, supra.

En este caso, PDL recurrió de un asunto interlocutorio que, conforme la Regla 52.1 de Procedimiento Civil, supra, era revisable por tratarse de un dictamen que limitó sustancialmente la reclamación de PDL a tal punto que dispuso de varias de las alegaciones de la demanda. Esta Regla cobra una importancia mayor en el contexto particular de este caso, el cual comenzó hace más de quince (15) años y en el cual se ha recurrido al foro apelativo intermedio en tres ocasiones, dos de ellas para revisar determinaciones del Tribunal de Primera Instancia sobre la reclamación de PDL por dolo contractual. Este trámite procesal extenso, unido a que la decisión del foro primario limitó sustancialmente la reclamación de PDL, es suficiente para demostrar que obligar a PDL a esperar a que recaiga

sentencia constituiría un fracaso irremediable de la justicia conforme la Regla 52.1, supra, y su jurisprudencia interpretativa. Resolver lo contrario contravendría el principio de economía procesal, pues retrasaría aún más y de forma innecesaria la adjudicación de una controversia medular para el ejercicio efectivo de la reclamación por dolo contractual en la que PDL insistió desde el inicio del pleito.

Igualmente, tomados en conjunto, los criterios que identifica la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, favorecían expedir el recurso de certiorari. Según vimos, los fundamentos que empleó el foro primario para negarle a PDL la oportunidad de presentar prueba sobre dolo contractual no fueron correctos en derecho. Regla 40(A), supra. El caso está en su etapa final, por lo que exigir que PDL hiciera valer su reclamo por la totalidad de los daños en una etapa posterior hubiese obligado al foro primario a fraccionar aún más el caso y dilatado los procesos innecesariamente. Reglas 40(E), (F), supra. Finalmente, según se discutió, obligar a PDL a esperar a que recayese una sentencia –tomando en consideración (1) el trámite procesal extenso y accidentado de este caso y (2) que la decisión del foro primario limitó sustancialmente su reclamación– hubiese constituido un fracaso irremediable de la justicia. Regla 40(G), supra.

El dictamen del foro apelativo intermedio tuvo el efecto de avalar la determinación del Tribunal de Primera

Instancia que dispone indirectamente de parte de la reclamación del demandante, a saber: las alegaciones sobre la mala fe o dolo de AIG en el proceso de reclamación de la fianza. Como vimos, disponer de esa reclamación de esa forma no procedía en derecho.

En vista de que PDL no ha tenido la oportunidad de presentar prueba sobre todos los daños que reclamó en la demanda y de que la Sentencia de 2015 no limitó los daños que PDL puede reclamar, pues no tuvo ante su consideración las controversias sobre mala fe y dolo, resolvemos que el Tribunal de Apelaciones erró al denegar expedir el *certiorari*.

## IV

Por los fundamentos que anteceden, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que le permita a PDL presentar prueba sobre todos los daños que alegó y continúe con los procedimientos conforme con lo aquí resuelto.

Se dictará sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

800 Ponce de León Corp.

      Peticionaria

         v.

American International Insurance Company of Puerto Rico

      Recurrida

CC-2018-0498     *Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 15 de septiembre de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que le permita a PDL presentar prueba sobre todos los daños que alegó y continúe con los procedimientos conforme con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Martínez Torres emitió una Opinión Disidente. La Juez Asociada señora Rodríguez Rodríguez disintió sin opinión. La Jueza Asociada señora Pabón Charneco no interviene.


María I. Colón Falcón
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


800 Ponce de León Corp.

      Peticionaria

          v.                  CC-2018-0498

American International Insurance
Company of Puerto Rico

      Recurrida


Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES.


En San Juan, Puerto Rico, a 15 de septiembre de 2020.

Disiento respetuosamente de la Opinión que suscribe este Tribunal. La interpretación que una mayoría de este Tribunal le da a la Regla 52.1 de Procedimiento Civil, infra, es contraria a esta.

En primer lugar, el recurso del cual la parte peticionaria recurre es uno **interlocutorio** y no uno que dispone del caso en su totalidad, contrario a lo que sugiere la Opinión. Véase, Opinión, pág. 23.

En segundo lugar, la Opinión se equivoca al argumentar que como el caso de epígrafe tuvo un trámite procesal extenso, "obligar a PDL a esperar a que recaiga sentencia constituiría un fracaso

irremediable de la justicia conforme la Regla 52.1, supra, y su jurisprudencia interpretativa ". Íd. El trámite atropellado de un caso, por sí solo, no es fundamento suficiente para no cumplir con los requisitos de la Regla 52.1, infra, pues los peticionarios no quedan desprovistos de un remedio para hacer valer sus derechos. Por el contrario, cuentan con el mecanismo de la apelación dispuesto en nuestras Reglas de Procedimiento Civil.

La regla exige que el fracaso de la justicia sea irremediable y este no lo es. La omisión de ese requisito reglamentario de irremediabilidad crea un precedente perjudicial que aniquilará el propósito que nos impulsó al adoptar la Regla 52.1: limitar la expedición de recursos de _certiorari_ para revisar órdenes y resoluciones interlocutorias.

I.

El trámite de este litigio se recoge en la Opinión del Tribunal. Por lo tanto, lo adopto por referencia. 800 Ponce de León Corp. (en adelante, PDL) acude ante nos y señala que el foro apelativo intermedio erró al declararse sin jurisdicción y no expedir el auto de _certiorari_.

En específico, PLD argumenta que el foro primario erró al no permitirle presentar evidencia de los daños particulares que, alegadamente, American International Insurance Company of Puerto Rico (en adelante, AIG) le ocasionó al supuestamente actuar con dolo durante el trámite de la reclamación. Opinión, Pág. 7.

II.

El recurso de _certiorari_ es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. _IG Builders Corp. v. BBVAPR_,

185 DPR 307, 337-338 (2012). La determinación de expedir o denegar un recurso de <u>certiorari</u> está enmarcada dentro de la discreción judicial. <u>Íd</u>. Dicha discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". <u>Bco. Popular de PR v. Mun. de Aguadilla</u>, 144 DPR 651, 657-658 (1977).

De igual manera, hemos reiterado que los "tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por este último en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con **prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto**". <u>Citibank et al. V. ACBI et al.</u> 200 DPR 724,736 (2018). Énfasis nuestro.

III.

Por su parte, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales el Tribunal de Apelaciones tiene jurisdicción para atender los recursos de <u>certiorari</u>. En lo aquí pertinente, dicha regla dispone que "[e]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo".32 LPRA Ap. V, R. 52.1

La regla añade que el Tribunal de Apelaciones puede revisar resoluciones u órdenes interlocutorias del Tribunal de Primera Instancia cuando se recurra sobre decisiones en cuanto a "la

admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o **en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**". Id. Énfasis suplido.

Este análisis no es uno aislado, pues la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que el foro apelativo intermedio debe evaluar al expedir un auto de <u>certiorari</u>. Esta Regla dispone:

**Regla 40. Criterios para la expedición del auto de <u>certiorari</u>**

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B

Es importante destacar que lo que nos llevó a adoptar la Regla 52.1, supra, fue agilizar los procedimientos judiciales y reducir las instancias en las cuales las partes podrían acudir al Tribunal de Apelaciones para revisar órdenes y resoluciones interlocutorias, al limitarlas solamente a la revisión de órdenes dispositivas. Véase, Hon. Federico Hernández Denton, <u>En ocasión de la presentación de las nuevas Reglas de Procedimiento Civil en la Academia Judicial Puertorriqueña</u> (28 de enero de 2010). De ese modo, se procuró evitar dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo. Como afirma Cuevas Segarra en su Tratado de Derecho Procesal "...estas limitaciones lo que efectivamente hacen es restaurarle al *certiorari su característica de remedio extraordinario y especial* que había perdido ante normas procesales amplias y liberales que no imponía cortapisas a la sobre utilización del mismo para la revisión de órdenes y resoluciones interlocutorias…". J. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, 2da ed., Pubs. JTS, 2011, T. IV, 1503.

En el caso ante nuestra consideración, estamos frente a la denegatoria de una solicitud de presentación de pruebas sobre unos alegados daños particulares. Este es un asunto **interlocutorio**, cuyo resultado no dispone del caso. Además, el tipo de solicitud aquí en controversia no está entre las instancias permitidas por la Regla 52.1, supra. Ante esa realidad, la única forma en la cual el foro apelativo intermedio podría revisar la determinación interlocutoria del foro primario es **que el asunto en controversia esté revestido de interés público o que esperar a la apelación constituiría un fracaso irremediable de la justicia.** En la controversia ante nuestra consideración no se cumple con ninguna de estas instancias.

En primer lugar, el asunto en controversia no está revestido de interés público. Estamos ante la denegatoria de una solicitud de presentación de prueba. Esta es una disputa puramente procesal.

En segundo lugar, no atender la controversia en estos momentos no causaría un fracaso **irremediable** de la justicia, debido a que el peticionario no se queda desprovisto de remedio para revisar cualquier determinación que en su día resuelva el foro primario. Según la Opinión, "obligar a PDL a esperar a que recaiga sentencia constituiría un fracaso irremediable de la justicia conforme la Regla 52.1, supra, y su jurisprudencia interpretativa". Opinión, pág. 23. En este caso, de persistir la denegatoria a admitir la prueba que la parte peticionaria desea presentar, si el error cometido es perjudicial y si la peticionaria tiene razón en su planteamiento, el foro apelativo podría revocar la sentencia y devolver el caso al foro primario. Allí, en esa situación, procedería recibir la prueba excluida erróneamente y dictar una nueva sentencia. No se deja indefensa y sin remedio a la parte peticionaria. Por consiguiente, no hay un fracaso irremediable de la justicia.

Cualquier error de derecho en la etapa interlocutoria es, por definición, un fracaso de la justicia. Por eso, para que el Tribunal de Apelaciones intervenga en la etapa interlocutoria no basta concluir que el foro primario cometió un error. Tiene que tratarse de un error perjudicial que deje sin remedio efectivo a la parte afectada si el tribunal no interviene en esa etapa. Al requerir que el fracaso de la justicia sea **irremediable** —opuesto a remediable— la Regla, 52.1, supra, limita las instancias en las cuales el foro apelativo intermedio puede intervenir en las determinaciones interlocutorias del foro primario. Por lo tanto, el foro apelativo

intermedio tiene que evaluar si el error que se le está solicitando remediar es de tal magnitud que de no atenderse en el momento colocaría al peticionario en una posición de indefensión y no se podría conceder un remedio justo y efectivo en la etapa de apelación. No es suficiente que el peticionario alegue que el foro primario se equivocó o que la determinación de dicho foro le afecte de alguna forma. Tiene que probar que el error es de tal magnitud que esperar a la apelación le causaría un fracaso irremediable de la justicia, es decir, que le dejaría sin un remedio eficaz. En el presente caso, el peticionario no logró demostrar que la denegatoria de presentación de evidencia le causaría un perjuicio de tal magnitud que no remediarlo de inmediato – en la etapa **interlocutoria**- resultaría en un fracaso **irremediable** de la justicia.

Más aún, si tomamos como correcta la interpretación que la mayoría le da a la Regla 52.1, supra, entonces cualquier determinación interlocutoria de un foro inferior que coloque al demandante en posición de apelar el asunto luego de una sentencia final, constituye un fracaso irremediable de la justicia que autoriza la intervención de los foros apelativos. Por lo tanto, no hay discreción del foro apelativo intermedio para negarse a expedir cualquier recurso de <u>certiorari</u>, pues toda determinación interlocutoria errónea constituiría un fracaso irremediable de la justicia. Esto altera la Regla 52.1 de Procedimiento Civil, supra. Además, la interpretación equivocada que la Opinión le da a la Regla 52.1, íd., tendrá como consecuencia directa un torrente de recursos de <u>certiorari</u> innecesarios en nuestros foros apelativos, presentados con el pretexto de que esperar a la apelación le causaría al peticionario un perjuicio que, si no se corrige inmediatamente, sería un fracaso irremediable de la justicia.

Insisto en que el propósito de la Regla 52.1, supra, es reducir las instancias en las cuales el foro apelativo intermedio puede intervenir con las determinaciones discrecionales interlocutorias del foro primario. Este es el caso, salvo que el asunto en controversia esté contemplado entre las instancias en que la misma Regla 52.1, supra, autoriza la intervención del foro apelativo intermedio o que, por **excepción**, esperar a la apelación constituiría un fracaso **irremediable** de la justicia.

## IV.

En el caso ante nuestra consideración, el foro apelativo intermedio no erró al negarse a intervenir en la determinación del foro recurrido. No es un fracaso irremediable de la justicia esperar a la apelación para revisar todos los señalamientos de error que hace la parte peticionaria.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado